30 F.3d 132
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William Blaine HODGES, Defendant-Appellant.
 No. 93-5376.
 United States Court of Appeals, Fourth Circuit.
 Argued June 6, 1994.
Decided August 3, 1994.
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke. Samuel G. Wilson, District Judge. (CR-92-97-R).
 ARGUED: Melissa Warner Scoggins, Gentry, Locke, Rakes & Moore, Roanoke, VA, for appellant.
 Steven Randall Ramseyer, Asst. U.S. Atty., Abingdon, VA, for appellee.
 ON BRIEF: William R. Rakes, Gentry, Locke, Rakes & Moore, Roanoke, VA, for appellant.
 Robert P. Crouch, Jr., U.S. Atty., Abingdon, VA, for appellee.
 W.D.Va.
 AFFIRMED.
 Before RUSSELL and WILLIAMS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 William Blaine Hodges ("Hodges") was found guilty by a jury of embezzling funds of the United States Postal Service in violation of 18 U.S.C. Sec. 1711. He appeals that conviction, contending that there is insufficient evidence to support the guilty verdict. We disagree and accordingly affirm the conviction.
 
 I.
 
 2
 In September 1991, Hodges was working as a window clerk in the Vinton, Virginia post office. In that capacity, Hodges was issued and held accountable for a supply of money, stamps, and other items. He kept this stock in three places: 1) a cash drawer;[1] 2) a safe compartment; and 3) an envelope drawer. In accordance with Postal Service procedure, Hodges was given one set of keys to the locks on the above areas; a duplicate set was kept in two sealed, stamped, and signed envelopes locked in a safe.[2]
 
 
 3
 On the morning of September 11, 1991, Leslie Foster ("Foster"), the acting Postmaster of the Vinton post office, commenced an unannounced routine audit of the station. Beginning with window clerk Kevin Dillon, Foster counted the money, stamps, and other items for which Dillon was responsible. When Foster told Hodges that she would audit him next, Hodges stated that Foster could not touch his stamp stock until December, when his next audit was due.[3] After finishing counting Dillon's stock, Foster looked for Hodges so that she could commence his audit. Foster learned that Hodges had left work because he allegedly was not feeling well. Foster placed official seals over the three drawers that contained Hodges' stamp stock and, at the end of the day, placed seals over the safes that contained Hodges' drawers.
 
 
 4
 When Foster returned to work the next morning, the seals were still in place. Hodges, who routinely arrived just before his starting time of 8:15 a.m., was at work that day approximately thirty minutes early. Immediately upon her arrival, Foster counted Hodges' stamp stock and found a shortage of approximately $4,664.52. Foster testified that throughout the counting of his stock, Hodges was agitated and nervous. He complained that he was being treated like a common criminal and that Foster was making a big deal out of nothing. Hodges also asked Foster whether, if a shortage was found, he could pay back the missing amounts and whether he would be fired.
 
 
 5
 On November 19, 1992 a federal grand jury returned a one-count indictment charging Hodges with converting to his own use approximately $4,664.52 in United States Postal Service funds, in violation of 18 U.S.C. Sec. 1711. On February 5, 1993, after a two-day trial, a jury found Hodges guilty of the charged offense.
 
 II.
 
 6
 To prove that Hodges embezzled postal funds in violation of 18 U.S.C. Sec. 1711, the government had to establish: 1) that Hodges was a postal employee; 2) that postal funds came into Hodges' possession in his capacity as a postal employee; and 3) that Hodges converted those postal funds to his own use. 18 U.S.C. Sec. 1711.
 
 
 7
 The only issue in dispute at trial was whether Hodges had converted postal funds to his own use. To prove this element, the government relied solely upon circumstantial evidence showing that a substantial shortage in Hodges' stamp stock existed, that Hodges had sole access to the missing stamp stock, and that no plausible explanation for the shortage was offered by Hodges. See United States v. Powell, 413 F.2d 1037, 1038 (4th Cir.1969) (holding that the actual appropriation of postal funds may be proved by circumstantial evidence where the defendant alone has access to the property, a substantial shortage is disclosed, and no plausible explanation for the shortage is tendered by the accused). Hodges contends on appeal that the circumstantial evidence presented by the government is insufficient to prove that he had sole access to the missing postal funds.[4] We disagree.
 
 
 8
 In reviewing the sufficiency of evidence in criminal cases, we must view the evidence and all inferences that reasonably may be drawn from it in the light most favorable to the government. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982). Only if, after reviewing the evidence, we find that a reasonable jury could not have found beyond a reasonable doubt that Hodges committed the charged offense, will we reverse the conviction. Id.
 
 
 9
 The evidence in the record indicates that prior to Hodges' audit, there had been no complaints about the security of the Vinton post office. There is no evidence that any of the post office's safes or locks had been tampered with. Moreover, the duplicate key envelope (Government Exhibit # 9) containing copies of Hodges' cash drawer key, safe compartment key, and envelope drawer key were properly sealed, stamped, and signed, and showed no signs of tampering.[5] Hodges argues on appeal that another postal employee or a member of the public could have had access to the missing stamp stock given what he claims to be the poor security in the Vinton post office. According to defense witnesses, stamp stock has been found lying out in the open and in trash bins, safes have been left open in the evening, and the back door to the post office could be easily pushed open because the combination lock did not catch. Even assuming the truth of Hodges' allegations of poor security, we must nevertheless conclude that the jury was justified in rejecting his contention that such security breaches gave other postal employees and the public access to the missing stamp stock. First, that other postal employees may have left stamp stock lying out in the open and in trash bins has absolutely nothing to do with whether someone other than Hodges had access to the missing stamp stock. Second, access to the safe and the back door would still not provide access to Hodges' locked drawers because one would also need the keys to the drawers to open them.
 
 III.
 
 10
 We find that the government has adduced sufficient evidence from which a jury could conclude that Hodges converted postal stock to his own use. Hodges' embezzlement conviction is accordingly
 
 
 11
 AFFIRMED.
 
 
 
 [1]
 Cash drawers are kept locked in a safe, from which the clerk removes the drawer when beginning a work day
 
 
 [2]
 Specifically, the duplicate key envelope marked as "Government Exhibit # 9" contained a copy of the keys to Hodges' cash drawer, safe compartment, and envelope drawer. "Government Exhibit # 10" contained a copy of the key to Hodges' safe compartment
 
 
 [3]
 Hodges' next audit was not due in December, as he stated. Rather, according to Postal Service procedure, his next audit was required to be within at least 120 days of his previous audit which took place on July 31, 1991
 
 
 [4]
 Hodges also raises two evidentiary issues which we find to be completely without merit and reject
 
 
 [5]
 Hodges contends that he could not have had sole access to the missing stamp stock because the duplicate key envelope (Government Exhibit # 10) containing a second copy of the key to Hodges' safe compartment was sealed and stamped in accordance with Postal Service procedure but was not signed across the seal. We disagree. Although Hodges correctly notes that the duplicate key envelope was not signed across the seal, the record contains no evidence of tampering. Moreover, if someone had used the duplicate key to steal approximately $4,554.52 of Hodges' stamp stock, the testimony at trial indicated that because the majority of Hodges' stamp stock was in $.29 denominations, Hodges should have noticed that such a large amount of stamps was missing and accordingly reported the shortage. Hodges, however, never reported anything missing from his stock. We accordingly reject Hodges' contention that a reasonable jury could not have found that he had sole access to the missing stock because the duplicate key envelope containing a copy of the key to Hodges' safe compartment was not signed across the seal